IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,827

In the Matter of JEFFERY A. MASON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 23, 2016. Six-month suspension followed by 3 years' probation.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Jeffery A. Mason*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Jeffery A. Mason, of Goodland, an attorney admitted to the practice of law in Kansas in 1983.

On December 28, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent timely filed an answer on January 7, 2016; on the same date respondent filed a proposed probation plan. Respondent and the Disciplinary Administrator entered into a Joint Stipulation as to Rule Violations on February 19, 2016, the same day a hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1

1

(2015 Kan. Ct. R. Annot. 442) (competence); KRPC 1.3 (2015 Kan. Ct. R. Annot. 461) (diligence); KRPC 1.4(a) (2015 Kan. Ct. R. Annot. 482) (communication); KRPC 8.4(c) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and KRPC 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"DA12171

"8.     Beginning in 1998, the respondent represented J.J. (formerly J.T.) in a worker's compensation case. J.J. had a claim against Walmart in Goodland, Kansas. The respondent and J.J. entered into an employment agreement which provided the respondent with a 25% contingency fee.

"9.     J.J. was evaluated and received a 24% body of the whole rating on June 26, 2000. On October 23, 2000, Administrative Law Judge Pamela Fuller held a hearing. On January 2, 2001, Judge Fuller issued a decision and issued an award of 24% permanent partial general disability. Judge Fuller did not make an award for work disability.

"10.     The respondent timely appealed the denial of work disability with the worker's compensation board. The board affirmed the award. The respondent appealed the board's decision to the Kansas Court of Appeals. The court affirmed the award.

"11.     J.J. was awarded a net payment of $15,078.58, with the right to receive future medical treatment at Walmart's expense, upon proper application and approval.

2

The respondent suggested to J.J. that she should apply for social security disability benefits. J.J.'s application for social security disability was successful.

"12.    In 2004, J.J. again met with the respondent. J.J. informed the respondent that her condition had worsened. On June 18, 2004, the respondent made a new demand for compensation to Walmart. Through counsel, Walmart refused to pay any additional compensation. On February 24, 2005, the respondent filed an application for review and modification.

"13.    On February 23, 2006, the parties settled the matter for $30,000. The respondent and J.J. understood that, as part of the settlement, Walmart would make an application for a Medicare set aside account for future medical expenses incurred by J.J. and that all prior medical expenses were to be paid by Walmart. The respondent and J.J. were incorrect in their understanding.

"14.    On May 31, 2007, J.J. received a letter from the Center for Medicare and Medicaid Services (CMS). CMS requested reimbursement of $13,978.69 in medical expenses based on the settlement made in February 2006. The respondent appealed the request through the Medicare process. In June 2010, the Department of Health and Human Services (HHS) conducted a hearing. Following the hearing, HHS affirmed the CMS ruling regarding reimbursement of the medical expenses. On August 27, 2010, the respondent requested review with the departmental appeals board. Later, the board affirmed the decision. Throughout this time, Walmart refused to reimburse the medical expenses.

"15.    The respondent began to panic. He did not know how to get J.J. what she wanted. The respondent was unable to tell J.J. that he did not know how to get her what she wanted.

"16.    In 2010, the respondent prepared another application for review and modification. The respondent obtained J.J.'s signature on the application. The respondent did not file the application.

3

"17.     On many occasions, J.J. asked the respondent when a hearing would be held on the application. The respondent misled J.J. and repeatedly falsely told her that the application was scheduled for hearing. The respondent continued providing false information by informing J.J. that the various hearings were continued. The respondent created notices of hearing for hearings that were never scheduled for January 7, 2013; February 3, 2013; April 8, 2013; June 10, 2013; October 7, 2013; July 7, 2014; and October 6, 2014.

"18.     With respect to the June 10, 2013, alleged hearing, the respondent created a notice of continuance which purported to have been prepared by Kendall Cunningham, counsel for Walmart. The notices of hearing and the notice of continuance drafted by the respondent were created to mislead J.J.

"19.     After J.J. filed a complaint with the disciplinary administrator, the respondent reviewed his file and determined that J.J. waived her claim on the issue of prior medical expenses in the 2006 settlement. The respondent acknowledged that he was wrong in advising J.J. that these medical expenses were to be paid by Walmart and that he was wrong in making a demand on Walmart for payment.

"DA12450

"20.     The respondent represented OneSource Investment Partners, LLP (OneSource) regarding a possible surface lease in Cheyenne County, Kansas. J.P. was the investment manager of OneSource and A.J. was the owner of the land involving the surface lease. Joseph Bain represented A.J.

"21.     The respondent and Mr. Bain were unable to reach an agreement regarding the lease. On March 13, 2014, Mr. Bain filed suit on his client's behalf against OneSource in Cheyenne County District Court. On May 16, 2014, the respondent filed an answer and counterclaim.

4

"22.    On June 9, 2014, Mr. Bain filed a motion to dismiss the counterclaim. The respondent failed to advise OneSource of the motion to dismiss the counterclaim. The respondent failed to respond to the motion.

"23.    On July 22, 2014, the court granted the motion to dismiss the counterclaim. The respondent failed to advise OneSource of the court's ruling. Additionally, the respondent failed to provide OneSource with a copy of the court's journal entry.

"24.    On October 3, 2014, the respondent was served with interrogatories, requests for production, and requests for admissions. The respondent did not provide the discovery requests to OneSource until October 19, 2014. On October 30, 2014, OneSource provided the respondent with responses to the discovery requests. OneSource signed the discovery responses on November 5, 2014. The respondent failed to forward the discovery responses to Mr. Bain.

"25.    On December 16, 2014, Mr. Bain filed a motion for summary judgment based upon OneSource's failure to respond to discovery requests. The respondent failed to inform OneSource of the motion for summary judgment.

"26.    The respondent filed a motion requesting an extension of time to respond to the motion for summary judgment. The court granted the respondent's motion. In preparing a response to the motion for summary judgement, the respondent requested that J.P. provide the respondent with an affidavit. The respondent did not explain to J.P. why the affidavit was necessary. The respondent attached J.P.'s affidavit to the response to the motion for summary judgment.

"27.    On March 10, 2015, the court held a hearing on the motion for summary judgment. The respondent did not inform OneSource that the hearing was being held. The respondent appeared at the hearing and argued the summary judgment motion on behalf of OneSource.

"28.     On April 27, 2015, the court granted partial summary judgment in favor of A.J. The court ordered the respondent to comply with discovery requests within 30 days and to remove certain property from the premises within 30 days. The partial summary judgment order included a judgment for $24,825.00. At that time, the respondent did not inform OneSource of the orders entered by the court.

"29.     On September 18, 2015, Mr. Bain filed a motion for discovery sanctions, a motion for citation in contempt, and a general execution in the case. The respondent did not inform OneSource of the filing of the motions and general execution. The respondent did not respond to the motion for discovery sanctions.

"30.     On October 13, 2015, the court held a hearing. At that time, the court ordered the respondent to comply with the discovery requests by October 30, 2015, and that OneSource remove certain property from the premises by October 30, 2015. The court ordered the respondent to pay 10 hours of attorney's fees to Mr. Bain.

"31.     On October 19, 2015, the respondent called J.P. During the telephone conversation, the respondent informed J.P. that the court granted partial summary judgment in favor of A.J., the respondent informed J.P. that judgment had been entered against OneSource in the amount of $24,825.00, the respondent informed J.P. that the court ordered OneSource to remove certain property from the premises by October 30, 2015, and the respondent informed J.P. that discovery requests had to be complied with by October 30, 2015.

"32.     On November 10, 2015, the respondent and J.P. appeared at a hearing. Following the hearing, the court entered an order against OneSource in the amount of $6,000.00 for contempt for failure to timely remove certain property from the premises. The court provided OneSource with one week to finish removing certain property from the premises or a $500.00 per day fine would be levied against OneSource for the continuing contempt. Finally, the court granted reasonable attorney fees.

"33.     At the time of the hearing on the formal complaint, the respondent continued to represent OneSource. Following the hearing, on February 22, 2016, the

6

respondent sent a letter to J.P. The respondent described the conflict of interest that exists. The respondent explained that for the respondent to continue to represent OneSource, J.P. would have to waive the conflict of interest. The respondent provided J.P. with a written waiver. Thereafter, J.P. executed the written waiver of the conflict of interest.

"*Conclusions of Law*

"34.    Based upon the findings of fact and the stipulations, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 8.4, as detailed below.

"KRPC 1.1

"35.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' In DA12171, the respondent violated KRPC 1.1 by providing incorrect advice to J.J. in advising her that prior medical expenses were to be paid by Walmart and in making demand on Walmart for payment of these expenses. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"36.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In DA12171, the respondent violated KRPC 1.3 by failing to file the application for review after J.J. signed the application. In DA12450, the respondent violated KRPC 1.3 by failing to respond to the motion to dismiss, by failing to promptly respond to discovery, by failing to timely advise his client that the plaintiff received partial summary judgment, and by failing to timely advise his client that the plaintiff had filed a motion for sanctions, a motion for citation in contempt, and a general execution. Because the respondent failed to act with reasonable diligence and

7

promptness in representing his clients, the hearing panel concludes that the respondent repeatedly violated KRPC 1.3.

## "KRPC 1.4

"37.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In DA12171, the respondent failed to advise J.J. about his inability to remedy the future medical expense problem. In DA12450, the respondent failed to advise OneSource of the dismissal of its counterclaim, failed to advise OneSource of the motion for summary judgment, failed to explain to J.P. why it was necessary for J.P. to sign an affidavit in connection with the response to the summary judgment motion, and failed to advise OneSource of the summary judgment hearing. Accordingly, the hearing panel concludes that the respondent repeatedly violated KRPC 1.4(a).

## "KRPC 8.4(c)

"38.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). In DA12171, the respondent engaged in multiple instances of dishonest conduct regarding J.J.'s application for review, made misleading statements to J.J. regarding hearing dates and continuances, created purported pleadings to support his misleading statements, and created a notice of continuance purportedly prepared by counsel for Walmart, all in violation of KRPC 8.4(c). As such, the hearing panel concludes that the respondent repeatedly violated KRPC 8.4(c) with regard to his representation of J.J.

## "KRPC 8.4(d)

"39.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In DA12450, the respondent repeatedly and deliberately violated the Kansas Rules of Civil Procedure and Kansas Supreme Court Rules. The respondent's conduct in the OneSource litigation demonstrated

8

'litigation conduct . . . that should not be tolerated by the Court.' Joint Stipulation. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"40.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"41.     *Duty Violated*. The respondent violated his duty to his client to provide competent and diligent representation. Additionally, the respondent violated his duty to adequately communicate with his clients. Also, the respondent violated his duty to the public to maintain his personal integrity. Finally, the respondent violated his duty to the legal profession.

"42.     *Mental State*. The respondent knowing and intentionally violated his duties.

"43.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to the legal profession and potential injury to his clients.

"Aggravating and Mitigating Factors

"44.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

9

"45.    *Dishonest or Selfish Motive*. The respondent repeatedly and deliberately engaged in dishonest conduct to hide other misconduct. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

"46.    *A Pattern of Misconduct*. The respondent engaged in patterns of misconduct. For example, the respondent created pleadings to make it appear to J.J. that a case was on file and that it had been repeatedly continued.

"47.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 8.4. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"48.    *Vulnerability of Victim*. J.J. was vulnerable to the respondent's misconduct.

"49.    *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas in 1983. At the time of the misconduct, the respondent had been practicing law for approximately 30 years.

"50.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"51.    *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"52.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from anxiety and depression. It is clear that the respondent's mental health problems contributed to his misconduct.

10

"53.      *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"54.      *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of Goodland, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the testimony of his law partner and many letters admitted into evidence.

"55.      *Imposition of Other Penalties or Sanctions.* The respondent has experienced other sanctions for his conduct. The respondent paid $1,400 in attorney fees ordered in the OneSource litigation. Additionally, a claim has been made against the respondent's malpractice carrier for the nearly $25,000 judgment and the $6,000 from the contempt charge. The respondent acknowledges his responsibility for these amounts and has promised that he will see that they are satisfied.

"56.      *Remorse.* At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"57.      In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42     Suspension is generally appropriate when:

(a)      a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)      a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

11

. . . .

'4.62   Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.'

"*Recommendation*

"58.   The disciplinary administrator recommended that the respondent's license to practice law be suspended for 1 year. The disciplinary administrator further recommended that following that year suspension, the respondent be ordered to undergo a reinstatement [hearing] under Rule 219 prior to consideration of reinstatement. The disciplinary administrator argued that a 1-year suspension and a reinstatement hearing [are] necessary to allow the respondent time to correct the problems and to protect the public. The respondent recommended that his plan of probation be adopted and that he be allowed to continue to practice law under supervision.

"59.   Because the respondent requested probation, the hearing panel turns its attention to Kan. Sup. Ct. R. 211(g)(3):

'The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)   the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)   the Respondent puts the proposed plan of probation into effect prior to the hearing on the

12

Formal Complaint by complying with each of
the terms and conditions of the probation plan;

(iii)     the misconduct can be corrected by probation;
          and

(iv)      placing the Respondent on probation is in the
          best interests of the legal profession and the
          citizens of the State of Kansas.'

While the first two factors are present in this case, the second two factors are not. The
respondent developed a workable, substantial, and detailed plan of probation. The
respondent also provided a copy of the proposed plan of probation to the disciplinary
administrator and each member of the hearing panel at least 14 days prior to the hearing
on the formal complaint. The misconduct in this case, however, cannot be corrected by
probation. In *In re Stockwell,* 296 Kan. 860, 868 (2013), our Supreme Court stated, 'this
court is generally reluctant to grant probation where the misconduct involves fraud or
dishonesty because supervision, even the most diligent, often cannot effectively guard
against dishonest acts.' Finally, placing the respondent on probation is not in the best
interests of the legal profession and the citizens of the State of Kansas.

"60.     The respondent's misconduct is serious. The respondent repeatedly
engaged in deliberate dishonest conduct. Based upon the findings of fact, conclusions of
law, and the Standards listed above and because of the serious nature of the misconduct,
the hearing panel unanimously recommends that the respondent be suspended for a
period of 1 year. The hearing panel further recommends that after serving 6 months'
suspension, the respondent be immediately placed on probation for a period of 3 years,
under the terms set forth below:

'a.      *Representation of OneSource*. If the respondent
continues to remain as counsel of record for OneSource and if J.P.
agrees, the hearing panel directs that the respondent's partner serve as co-

13

counsel, at the respondent's expense, and actively participate throughout the remaining aspects of the ongoing litigation involving OneSource.

'b.      *Inventory of Cases and Clients.* The respondent shall maintain an inventory of all open cases and clients. The respondent shall update the inventory on a daily basis. The inventory shall include the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

'c.      *Client Communication*. The respondent shall contact each client by letter at least once every 3 months regarding the status of the matter.

'd.      *Practice Supervision*. J. Ronald Vignery shall serve as the respondent's practice supervisor. The respondent shall meet with the practice supervisor on a weekly basis. During the weekly meetings, the respondent will provide the practice supervisor with an updated copy of the inventory of cases and clients. During the weekly meetings, the respondent will discuss potential problems, deadlines, scheduled court appearances, and the planned course of action in each case. The respondent shall allow the practice supervisor access to his client files, calendar, and trust account records. The respondent shall comply with any requests made by the practice supervisor. The practice supervisor shall prepare and forward a quarterly report to the disciplinary administrator regarding the respondent's status on probation. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor shall be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his supervising activities.

14

'e.     *Restitution*. The respondent shall ensure that the judgment and contempt sanctions are timely paid in the OneSource litigation.

'f.     *Office Procedures*. Within 10 days of being placed on probation, the respondent shall provide the practice supervisor and the disciplinary administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The respondent shall modify that procedure if directed to do so by the practice supervisor or the disciplinary administrator. The respondent shall follow the written office procedures.

'g.     *Audits*. Within thirty (30) days of the date the respondent is placed on probation, the practice supervisor shall conduct an initial audit of the respondent's files. Thereafter, every 3 months, the practice supervisor shall conduct additional audits. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor shall include such information in his report. The practice supervisor shall provide the disciplinary administrator and the respondent with a copy of each audit report. The respondent shall follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

'h.     *Psychological Treatment*. The respondent shall continue his treatment for anxiety and depression throughout the period of supervised probation, unless the counselor determines that continued treatment is no longer necessary. The counselor shall notify the practice supervisor and the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the counselor during the probationary period. The respondent shall provide the counselor with an appropriate release of information to allow the

15

counselor to provide such information to the practice supervisor and the disciplinary administrator.

'i.     *Medication*. The respondent shall comply with all medication recommendations made by his physician throughout the period of probation. The respondent shall provide the physician with an appropriate release of information to allow the physician to provide inform[ation to] the practice supervisor and the disciplinary administrator should the respondent fail to comply with the medication recommendations.

'j.     *KALAP Monitoring Agreement*. The respondent shall comply with the KALAP monitoring agreement throughout the period of probation. The respondent shall provide the KALAP monitor with an appropriate release of information to allow the KALAP monitor to inform the practice supervisor and the disciplinary administrator should the respondent fail to comply with the KALAP monitoring agreement.

'k.     *Continued Cooperation*. The respondent shall continue to cooperate with the disciplinary administrator. If the disciplinary administrator requests any additional information, the respondent shall timely provide such information.

'l.     *Professional Liability Insurance*. The respondent shall continue to maintain professional liability insurance.

'm.     *Additional Violations*. The respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent shall immediately report such violation to the practice supervisor and the disciplinary administrator. The disciplinary

16

administrator shall take immediate action directing the respondent to show cause why the probation should not be revoked.'

"61.     Costs are assessed against the respondent in an amount to be certified by the office of the disciplinary administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2015 Kan. Ct. R. Annot. 369). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.1 (2015 Kan. Ct. R. Annot. 442) (competence); KRPC 1.3 (2015 Kan. Ct. R. Annot. 461) (diligence); KRPC 1.4(a) (2015 Kan. Ct. R. Annot. 482) (communication); KRPC 8.4(c) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and KRPC 8.4(d) (engaging in conduct prejudicial to the administration of justice) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

17

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended for a period of 1 year and that respondent be required to undergo a reinstatement hearing pursuant to Supreme Court Rule 219 (2015 Kan. Ct. R. Annot. 403). Respondent recommended that his probation plan be adopted and that he be allowed to continue to practice law under supervision. The hearing panel recommended a 1-year suspension and that after serving 6 months of that suspension, respondent be placed on probation for 3 years according to terms set out in the final hearing report.

We agree with the hearing panel that the misconduct is serious and requires a period of suspension. At the hearing before this court, respondent's genuine remorse was evident. We therefore order respondent suspended from the practice of law for a definite period of 6 months from the date of this order. Following his term of suspension, respondent shall be reinstated to serve a term of 3 years' probation according to the conditions set out in the final hearing report.

A minority of the court would impose a lesser sanction.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that JEFFERY A. MASON be and he is hereby disciplined by a definite suspension from the practice of law in the state of Kansas for a

period of 6 months, in accordance with Supreme Court Rule 203(a)(2) (2015 Kan. Ct. R. Annot. 293), as of the date of this order.

IT IS FURTHER ORDERED that following his term of definite suspension, respondent shall be immediately reinstated to serve a term of 3 years' probation according to the conditions set out in the final hearing report.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

NUSS, C.J., and LUCKERT, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

ROBERT J. FLEMING, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 115,827 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** District Judge Fleming was appointed to hear case No. 115,827 vice Justice Luckert under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.